NANNIE POWERS, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.*

Kansas City Court of Appeals. May 20, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 728, p. 807, n. 88; section 781, p. 882, n. 32; 4CJ, section 2961, p. 982, n. 44; section 3137, p. 1139, n. 70; Damages, 17CJ, section 326, p. 1032, n. 12; section 438, p. 1107, n. 64; Evidence, 22CJ, section 733, p. 639, n. 27; Municipal Corporations, 43CJ, section 1840, p. 1066, n. 92; section 1974, p. 1205, n. 96; section 2055, p. 1301, n. 93; section 2059, p. 1308, n. 60; section 2062, p. 1314, n. 93.

*Forsee & Forsee* for respondent.

*John T. Barker, Marcy K. Brown, Jr.,* and *Arthur R. Wolfe* for appellant.

BARNETT, C.—This is an action for personal injuries. The original petition was filed in the Circuit Court of Jackson County on August 19, 1925. An amended petition was filed on February 9, 1928. The original petition nowhere appears in the abstract of

record. The amended petition alleges that on or about the 25th day of December, 1923, plaintiff, as a pedestrian, was on a sidewalk crossing a bridge over the Blue River in Kansas City, Missouri; that the city had for a long time prior thereto negligently permitted the sidewalk to become out of repair in this,—there was a hole in the sidewalk about one and one-half feet wide and two or three feet long which the city had negligently permitted to remain for several weeks, and that defendant knew or, by the exercise of ordinary care could have known of the existence of the hole in time by the exercise of ordinary care to have repaired the sidewalk; that defendant negligently failed to light the bridge or sidewalk so that the pe·destrians could safely use the sidewalk at that time; that the defendant stepped into the hole and was injured.

It was further alleged that on or about the first day of February, 1927, plaintiff undertook to visit a neighbor and that while she was ascending a flight of stairs her injured left leg gave way solely on account of the injury she received upon the sidewalk and that by reason of her left leg giving away plaintiff fell and broke her right leg, ankle and foot and sprained, tore and bruised the ligaments and muscles thereof; that the injury to her right leg is permanent and was caused solely by the injury to her left leg when she fell into the hole upon the sidewalk.

The answer was a general denial and a plea of contributory negligence. The jury returned a verdict for the plaintiff in the sum of $7500. A motion for a new trial was filed and overruled and defendant appealed.

The evidence most favorable to plaintiff was to the effect that on Christmas Day, 1923, at about six o'clock in the evening plaintiff was crossing a bridge over the Blue River. There was a space of about three feet on the south side of the bridge that was constructed as a sidewalk. The floor was constructed of planks. There were no lights upon the bridge and it was dark at the time, although there was dim light from certain buildings in the vicinity. Plaintiff stepped into a hole which was about twelve inches across and which was about eight or ten feet from the end of the bridge. The bridge was a little more than two hundred feet long. Some of the witnesses said that the bridge was in a bad condition all the way across, and others said that there were holes at various places in the bridge. The hole into which plaintiff stepped was caused, as one witness said, by the fact that a plank in the floor was missing. Others said that it was due to the fact that two planks, each six inches wide, were missing. There was evidence that this was the only hole which was big enough for plaintiff to step into. The evidence shows that the plaintiff was stunned and that the skin was scraped off of her leg just over the shin bone. She treated the injury herself with

arnica and Sloan's Liniment and by the application of towels. She finally consulted her doctor who told her to continue the treatment the same as she had done. The point of injury continued to be tender and sore, and finally an ulcer broke out at the place of injury which was treated by a physician. After she had been treated for a time the ulcer healed over, but the place of injury remained tender. One of the doctors testified that the running sore indicated that there had been an injury to the bone.

Plaintiff had had kidney and bladder trouble before her injury for which she had received a long course of treatment. She had apparently recovered from this trouble at the time she received her injury, but after she received her injury the kidney and bladder trouble returned and has never since been cured. The plaintiff testified that she had had trouble with her hearing since she was five years old, but that her defective hearing had become worse since her injury. She also testified that she had worn glasses for nineteen years, but that her eye sight had become worse and had troubled her since the time of her injury. She also testified that she had not had her glasses changed for five years before the time of the trial; that since the time of the injury her left leg was weak and would give way and by reason of this fact she had fallen a number of times.

In 1927 she went to visit a friend and in ascending a flight of stairs her left leg gave way and caused her to fall. In this fall she received a Pott's fracture of the bone of the right leg at its termination at the ankle. The fracture was set by physicians, but in attempting to push the bone back into its proper place the physicians pushed the bone in too far so that there has been a faulty union which interferes with the use of plaintiff's right ankle and foot. One physician testified that in his opinion the faulty union could be corrected or partly corrected by an operation. Another physician testified that he did not know whether the operation would correct the condition or not; that the operation would be a serious matter because, on account of plaintiff's age, there was likelihood of an infection; that if an infection should follow the operation it would result in a permanent stiff ankle. Plaintiff testified that she had been unable to work since her injury, but she had ceased to work for wages sometime before her injury.

When the plaintiff's attorney put the first witness upon the stand who testified in regard to the injury to the right leg, plaintiff's attorney completed the examination concerning the second injury without any objection upon the part of defendant. Defendant's attorney then asked a few questions upon cross-examination concerning the second injury and then said:

"If the court please, I would like to make this objection; that the testimony of this witness in regard to this second accident be stricken

from the record because the witness did not know the plaintiff in this case prior to this accident and subsequent to the former accident in this case for such a remote time as to be unable to testify from his own knowledge. There is no connection between the two, there has been no connection between the two shown by any witness up to this time, no cause of connection has been shown by this witness or any other.''

This motion was overruled by the court after which the attorney for the city continued to examine the witnesses concerning the second injury. Thereafter, much evidence was introduced concerning the second injury and from time to time the defendant's attorney would ask questions concerning the second injury. After the motion to strike out was overruled and while one of the physicians was testifying concerning the second injury the attorney for defendant stated:

''I understand all this evidence respecting the right leg is subject to being connected up, it being a pure question of law and subject to a later ruling.''

The court said:

''Yes, sir, of course, it has to be connected up or it could not be competent.''

Much further testimony concerning the second injury was introduced and then the attorney for the defendant made this objection:

''At this point, Your Honor, we wish to object to the doctor testifying to anything pertaining to the plaintiff's right leg or injury supposed to have followed her second fall, for the reason that the second fall and injury are too remote and speculative and not connected up, no causal connection between that and the claimed first fall.''

The court said: ''Overruled, I will determine about that later on.''

Much more testimony was introduced and then, while another physician was on the stand, the following occurred:

''Q. You may examine—wait a minute. Doctor, will you state to the jury whether or not the injury which you found to her left leg and to the sacroiliac, that portion that pertains to the spine or the column, if of such a nature that it could have caused her to have fallen and given way in going up the steps as she was going up, and causing her to have that fall?

''MR. RYLAND: I object to that as highly improper in form as a hypothetical question, it does not contain the facts in evidence and omits other facts in evidence in the framing of the question. It is vague, indefinite and uncertain. The injuries mentioned here are of two different examinations over a period of time. There is nothing in the hypothetical question about the woman's previous physical question.

"Mr. Forsee: I am not asking a hypothetical question.

"Mr. Ryland: And, furthermore, the question invades the province of the jury.

"The Court: As I understand, the question is inquiring about something that I had ruled out, that is in regard to the sacroiliac joint.

"Mr. Forsee: No, I did not aim to do it at all. I said omitting the sacroiliac joint and considering only that portion as part of the spinal column.

"The Court: Overruled.

"To which action and ruling of the court defendant then and there at the time duly excepted. (Question read by the reporter.) Omitting the sacroiliac joint, it connects with the hip bone? A. Yes, it could."

The plaintiff introduced in evidence a notice of the injury addressed to the mayor of Kansas City which stated that plaintiff's injuries were "caused by reason of the defective condition of the board sidewalk for foot passengers on the south side of said bridge, two of said boards having been broken or displaced." When this notice was offered in evidence the attorney for the city objected to its introduction for the reason that it did no comply with section 8904, Revised Statutes 1919, and for the reason that it was indefinite as to location and place of the accident in that it covered an entire bridge, a large area; and for the further reason that there was no proof of service or that it was ever served on the mayor of Kansas City. Plaintiff put Mr. Frank B. Cromwell upon the stand who testified that he was the mayor of Kansas City on February 23, 1924; that he had no recollection of the particular notice or of its service; that he did not know whether he was present or absent; that his name was signed to the acknowledgment of the receipt of the notice by his secretary; that his secretary was authorized to sign his name to such notices as this in his presence and that he did do so. He stated that he was served almost every day with some sort of legal notice of this kind and that whenever the deputy sheriff came there to serve him and he was busy in his office, in conference, or the sheriff could not get inside, his secretary would come to the door and ask if he would accept service upon the notice; that he would say "yes," and the secretary would sign the notice right there in his presence; that this was his universal custom, though he had no recollection of what was done concerning this particular notice. Mr. Brown, who had formerly been the attorney for plaintiff testified that he served the notice by taking it to the mayor's office; that the mayor's secretary was in the outer office, but he did not know whether the mayor was in the inner office or not. The secretary said: "I will accept service for the mayor," and signed the mayor's name to one of

the copies of the notice and kept the other. The attorney testified that he did not remember that the secretary first took the notice into the private room of the mayor.

At the close of all of the evidence the court gave plaintiff's instruction No. 1, which was the main instruction directing a verdict, by which the jury was required to find that because of the negligence of defendant in permitting the hole to remain in the bridge, and the failure to light the bridge plaintiff was injured. The instruction did not refer to the second injury.

The court also gave plaintiff's instruction No. 3 which is as follows:

"If you find the issues in favor of the plaintiff, you will assess her damages at such sum as will reasonably compensate her for the injuries, if any, you believe from the evidence she sustained, if any, and in estimating such damages you may take into consideration:

"First. The nature and character and extent of such injury, if any.

"Second. Such pain of body or mind, if any, as you believe from the evidence plaintiff has suffered from such injury and directly caused thereby.

"Third. Such physical disability, if any, as you find from the evidence plaintiff has suffered from such injury and directly caused thereby.

"Fourth. Such physical disability, if any, as you find from the evidence plaintiff will suffer in the future, by reason of such injury and directly caused thereby, provided you find from the evidence that plaintiff will in the future suffer physical disability from such injury and directly caused thereby; provided, however, that such damages shall not exceed in the aggregate the sum of fifteen thousand dollars, the amount sued for by plaintiff.

"By naming this sum the court does not mean to imply that you find this sum or any sum, but merely to state the amount for which plaintiff sues."

The defendant requested the court to give instruction B, which is as follows:

"The court instructs the jury that all of the evidence in this case pertaining to plaintiff's injury or injuries claimed to have been received on or about February 1, 1927, is withdrawn from your consideration and the jury will disregard such evidence."

The court refused this instruction.

OPINION.

It is contended that plaintiff cannot recover for the reason that no notice of the injury was given to the mayor of the city, and for the reason that the notice itself is insufficient. Appellant claims

that section 8904, Revised Statutes 1919, requires the notice to be served upon the mayor, whereas the evidence shows that service was had on his secretary.

In the case of Reid v. Kansas City, 195 Mo. App. 457, this court held that the statute is mandatory and should be strictly construed as to the requirement that the notice must be given to the mayor within the time limit, but should be liberally construed as to the contents of the notice. In that case this court held that compliance with the statute was not shown nor excused by evidence that police officers had, pursuant to ordinance, made written reports of the accident to the city counselor and health commissioner within the ninety-day period, and that actual notice of the accident upon the part of the officers of the city will not dispense with giving the notice required by the statute. It was also held that the officers have no authority to waive the notice and that the fact that the injured person was not able to give notice did not excuse the failure to give notice within the time limit. We have no disposition to depart from the rule laid down in that case. But even though we had held that certain requirements of the statute should be strictly construed, the question remains, how strictly shall they be construed? We do not think that the court meant to say that it was the duty of an appellate court to resort to strained construction to hold that the notice was not given within the required time or that it was not delivered to the mayor in every case where it is possible to do so. What this court said in the case of Reid v. Kansas City, supra, must be read in connection with what was said by the Supreme Court in the later case of Costello v. Kansas City, 280 Mo. 576. In that case suit was instituted against Kansas City and another within ninety days after the date of the accident. The summons together with a copy of the petition was served upon one defendant, but the city, not being the first defendant served, was served only by delivery of a copy of the summons to the mayor. The court held that the statute prescribed no manner of service of the notice upon the city, and it is sufficient to show that the city actually received notice; that the city had filed an answer denying each and every allegation in plaintiff's petition contained which conclusively showed that *the city actually read and examined the petition, a copy of which was served upon the other defendant.* The court said that the object of the statute was to give the city an opportunity to investigate the case while conditions were fresh and thus protect itself against actions which may be brought long after the occurrence; that actual knowledge from some other source of the facts to be imparted by the notice is insufficient just as a verbal notice would be insufficient; but that the summons notified the defendant that it must, within a given time, file answer to the petition of Mary Costello; that that petition

was a public record which the city was bound to examine; and that since the summons referred to the petition, the city was therefore notified of the contents of the petition. The Supreme Court has not been unduly strict in determining what constitutes a delivery of the notice to the mayor.

Appellant has called our attention to authorities from other states in which it has been held that notice to one officer of the city will not satisfy the requirements of a statute that the notice must be delivered to another officer of the city. We are in full accord with the principle which underlies those decisions. It is for the Legislature to determine which officer shall be served, and we are without power to substitute our judgment for that of the Legislature. But we do have the power and duty to determine what constitutes delivery to the mayor and in so doing we will not by strained construction go beyond what we think was the manifest legislative intent. The Legislature must have understood that the mayor of a large city must run his office like a business man less the city's affairs come to disaster. It could not have been the intention of the Legislature that he should be so cribbed, cabined and confined that he could not perform his ministerial duties in his own office and under his own direction by the use of assistants. If every ministerial duty which he has to perform must be executed with his own hand, then it follows that the city is without power to furnish him with a secretary or a stenographer. We think the appellant attaches entirely too much importance to the corporeal body of the mayor. The question is, into whose control was the notice relinquished. If the attorney who served the notice had actually seen the mayor and informed him of the purpose of his visit, and the mayor had told him to place the notice upon his desk, could the attorney with safety comply with that request, or was it his duty to force the notice into the physical hand of the mayor against his consent? The notice was under the control and in the possession of the mayor whether he touched it with his flesh or not. We think there is no difference if the mayor expressly or apparently directed the notice to be put in the hands of his secretary in his office. It is true that his immediate subordinate in his own office might have failed to put the notice under his eye, but it is equally true that if the notice had been within his physical grasp he might have neglected to read it. We therefore hold that the notice was served upon the mayor within the meaning of the statute. To this effect see McCabe v. Cambridge, 134 Mass. 484; McMahon v. New York, 37 N. Y. S. 289; Kelley v. City of Minnenapolis, 79 N. W. 653.

The Supreme Court of Missouri has held that tax bills are valid which, by statute, must be signed by the president of the board of public improvements when his name has been affixed to the tax bills

by another at his direction. [State v. Reber, 226 Mo. 229.] That court has also held that an ordinance is valid when the mayor's signature has been affixed thereto by his secretary at his direction. [Porter v. Pavement Co., 214 Mo. 1.] In these cases the court held that when the proper officer directs another to affix his signature to the instrument the signature was that of the officer. He cannot delegate those duties which call for the exercise of his discretion, but he can delegate ministerial acts. The receipt of notice under section 8904, Revised Statutes 1919, is always purely ministerial. Therefore, the mayor may receive all notices required to be given by virtue of section 8904 through the secretary in his office.

It is claimed that the notice itself was insufficient because it merely stated that plaintiff was injured on the south side of the bridge without further indicating in what particular spot the defect existed. Appellant's main reliance is upon the case of Krucker v. St. Joseph, 195 Mo. App. 101. In that case the notice stated that the plaintiff was injured by slipping upon the ice upon the sidewalk upon the west side of Twenty-fourth street between Jackson and Vories streets in the city of St. Joseph, a distance of four hundred twenty feet. The court distinguished the case from those cases where the place stated in the notice was described as between two streets but there was something else which had the effect to locate the place and afford the city something definite enough to be a guide to investigation, such as the statement that the defect was a hole in the sidewalk, and the evidence showed that there was but one hole between the designated points, or that the cause of the injury was a stump projecting four inches above the walk, and there was but one stump between the points, or that the defect was a pile of dirt.

In the case of Johnston v. Kansas City, 243 S. W. 265, this court held that the notice described the place sufficiently where the petition which was filed within the ninety-day period stated that "there had been left a large number of deep holes in said street and that plaintiff stepped directly into one of said holes in said street thereby receiving injury." The testimony in that case showed that there were about forty-six holes in the street between Grand avenue and Walnut street. The notice in the instant case states that the hole was upon a certain bridge which was less than one-half a city block in length, and the evidence most favorable to plaintiff was to the effect that there was but one hole in the bridge which was big enough for the plaintiff to step in to. While there is some evidence that more than one hole existed, yet this only makes the question of the sufficiency of the notice a question for the jury.

It is claimed by appellant that the defect in the bridge was not the proximate cause of the injury to plaintiff's right leg. We think this contention is correct. Respondent relies upon the cases of

Connor v. Nevada, 188 Mo. 148; Papic v. Freund, 181 S. W. 1161 and Plummer v. City of Milan, 79 Mo. App. 439. In the case of Plummer v. City of Milan, supra, this court held that in an action for personal injury to an arm, plaintiff may show the condition of such arm at the time of the trial, and if the injury has been aggravated by causes other than the defendant's negligence, this is a matter that may be shown in defense in reduction of damages. In the cases of Connor v. Nevada and Papic v. Freund, supra, the trial court instructed the jury that damages could not be awarded on account of a second injury. In each case the appellate court suggested that the damages from the second injury might be the direct result of the negligence that caused the original injury, but refused to expressly decide the question. In each case an accident which was not of sufficient gravity to cause any injury to the plaintiff arrested the healing process in a broken bone which had not yet completely united. But in this case the plaintiff had a permanent injury to her left leg which caused that limb to "give way." According to her own testimony her left leg had repaired as completely as it will ever repair when the second injury occurred. Because of this permanent injury she fell and received a new injury to her right leg. It was a new and independent injury. There was nothing about the fall in 1927 which interfered with the healing process of the injury which she already had. If we should hold that plaintiff in this case could recover damages received by reason of the second injury then we would be compelled to hold that if a plaintiff lost his leg through the negligence of defendant, and thereafter, when his leg had completely healed, he found himself in the path of an approaching train and was unable to get out of the way because of his infirmity and thereby came to his death, his widow might recover damages for the wrongful death from the defendant whose negligence caused him to lose his leg. In this case the intervening cause was the efficient cause.

However, the authorities cited by the respondent do support the contention that the evidence concerning the second injury was admissible. Plaintiff was before the jury and it was no doubt apparent to them that she was very much disabled. It was proper to know how much of that disability arose from the first injury and how much from the second. Furthermore, the examination of one witness had been completed before the motion was made to strike out the testimony. The second injury was completely before the jury before an objection was made. It has been held that when a party permits his opponent to introduce improper evidence without objection it is not substantial error materially effecting the merits if the court thereafter permits the same kind of evidence over objections. [Henson v. Morrison, 298 S. W. 254; Gieske v. Redemeyer,

224 S. W. 92; Smith v. Woodman of the World, 179 Mo. 119, l. c. 133; Grocery Co. v. Smith, 74 Mo. 419; Neely v. Chicago Great Western R. Co., 14 S. W. (2d) 972.]

It is claimed that the court erred in refusing to give instruction B which would have withdrawn from the consideration of the jury all the evidence in the case pertaining to plaintiff's injury received on February 1, 1927. Authorities are cited to the effect that when incompetent evidence is admitted the court may, under certain circumstances, cure the error by an instruction with drawing that evidence from the consideration of the jury. Appellant also cites cases to the effect that the defendant is entitled to an instruction limiting the matters that the jury may consider in assessing the damages, and that the defendant is entitled to an instruction withdrawing an assignment of negligence from the consideration of the jury where the plaintiff has failed to sustain the allegations of his petition as to that allegation. We are of the opinion that the defendant in this case was entitled to an instruction directing the jury not to award any damages to the plaintiff on account of her second injury. However, defendant was not entitled to an instruction withdrawing all the evidence of such second injury from the consideration of the jury. In framing hypothetical questions to physicians plaintiff's attorney had, during the trial, been compelled to take into consideration the condition of the health of the plaintiff. We have already pointed out that courts have held that in a suit for personal injury it is competent to introduce evidence showing that plaintiff had had a second injury. It is never error to refuse an instruction which withdraws competent evidence from the consideration of the jury. It is proper to give an instruction limiting the effect of that evidence. No such instruction was requested.

It is claimed that the court erred in admitting evidence of plaintiff's second fall for the reason that notice of the second injury was not given to the mayor of Kansas City as required by section 9804, Revised Statutes 1919. We have already held that plaintiff was not entitled to recover on account of the second injury and it is admitted by the appellant that plaintiff's instructions were based entirely upon the first injury. No such objection as this was made at the trial. Even if we should hold that it was necessary to give a new notice to the city when a second injury occurs as a direct result of the original negligence, yet it does not follow that the evidence of the second injury was incompetent.

It is contended that the court erred in permitting Dr. Archie M. Johnson to testify that the injury to plaintiff's left leg was of such a nature that it could have caused her second fall. The answer and the objection referred to are set out in the statement.

It is contended that this asked for an opinion outside the expert's field of science and therefore invaded the province of the jury, because it called for his opinion concerning the cause of plaintiff's second fall rather than for his opinion on the cause of any physical condition. The physician did not state that the injury to the left leg did cause the plaintiff's second fall, but only that it could. We think that a layman would have great difficulty in determining whether or not a bruise upon the leg would be likely to make the leg give way, and that it was proper to introduce the opinions of experts. We are now treating the objection as though the plaintiff had a right to recover for damages resulting from the second injury, not because we believe that to be true, but because the objection was framed upon that theory. We cannot consider an objection to this testimony which was not assigned in the trial court.

It is claimed that the verdict for $7500 is excessive. It is not too much as compensation for all of the pain and disability which the plaintiff has suffered. But we cannot escape the conclusion that the jury awarded the plaintiff compensation for all of her disabilities and did not confine themselves to those injuries which she received as a direct result of defendant's negligence. The jury must have awarded damages because of plaintiff's injury to her right leg. It is true that the defendant made so few and such untimely objections to the evidence concerning the injury to the right leg that we would not reverse the case because the belated objections were overruled, even if we thought the evidence was incompetent. However, no matter how unscientifically those objections were interposed, they at least plainly indicated to the trial court that the defendant was contending that it was not liable for the injury to the plaintiff's right leg.

We therefore hold that the appellant has the right in this court to complain that the verdict is excessive. It is impossible in this case for us to cure the error by requiring a *remittitur* as a condition to affirmance. We do not know how much damage the jury awarded by reason of the injury to the right leg. If we should attempt to cure the error by requiring a *remittitur* we would have to fix the damages for which the defendant is liable in the first instance. We have no power to do this.

The judgment is reversed and the cause remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETTT, C., is hereby adopted as the opinion of this court. All concur, except *Trimble, P. J.,* absent.