THE STATE EX REL. CLEAVER PYLE, Administrator of Estate of FRANK PYLE, v. CITY OF UNIVERSITY CITY ET AL., Appellants.— 8 S. W. (2d) 73.

Division Two, June 21, 1928.

*Karl M. Vetsburg* for respondent.

*Joseph H. Grand* for appellants; *Greensfelder, Rosenberger & Grand,* of counsel.

DAVIS, C.—On December 1, 1926, to collect a judgment rendered against University City based on a tort, plaintiff filed in the Circuit Court of St. Louis County a petition for an alternative writ of mandamus in aid of execution. The alternative writ of mandamus issued, directed to the city of University City, its mayor, aldermen, collector and treasurer. The court overruled appellants' motion to quash the writ, appellants standing thereon and refusing to plead further. Thereupon a peremptory writ of mandamus issued, to which appellants filed a motion in arrest of judgment and to quash, which the trial court overruled. Upon application appellants were allowed an appeal here.

It develops that Frank Pyle died as the result of injuries received, caused by the negligence of University City. On April 12, 1922, suit was filed in the Circuit Court of St. Louis County against said city by his administrator to recover damages therefor. On February 2, 1924, on a trial of the cause, the jury returned a verdict in favor of plaintiff in the sum of $7500 against said city. On May 5, 1924, the court sustained a motion for a new trial on the ground of erroneous instructions. Plaintiff appealed to the St. Louis Court of Appeals, which court reversed the order sustaining the motion for a new trial and remanded the cause to the trial court with directions to reinstate the verdict and render judgment accordingly. [Pyle v. University City, 279 S. W. 217.] On July 26, 1926, the Circuit Court of St. Louis County, in compliance with the mandate of the appellate court, reinstated the verdict, and entered judgment for the plaintiff in the sum of $7500 against said city, but disallowed interest computed from February 2, 1924, to July 26, 1926, due to the verbiage of the mandate, which neglected to order the judgment reinstated as of the original date. The execution, issued on the judgment entered July 26, 1926, was returned *nulla bona* by the sheriff.

On August 26, 1926, said city filed its motion to set aside and stay judgment, and to recall execution. On September 25, 1926, the Circuit Court of St. Louis County overruled the motion, and on said date the said city filed a motion for a new trial, which said motion was, on September 25, 1926, submitted and overruled. Thereupon said city filed its affidavit of appeal, deposited a docket fee of ten dollars, and made application for an appeal, which application was denied on October 4, 1926.

On December 1, 1926, plaintiff filed an application for an alternative writ of mandamus to compel defendant, said city, and its proper officers, to levy the tax necessary to pay the aforesaid judgment.

On December 11, 1926, the city of University City filed a motion to quash the alternative writ of mandamus, which motion to quash was, on December 11, 1926, overruled. The city declining to plead further, a peremptory writ of mandamus was issued on December 11, 1926, by the Circuit Court of St. Louis County. On December 16, 1926, said defendants filed their motion in arrest of judgment and to quash the peremptory writ of mandamus, which said motion was over-ruled by the the court on December 20, 1926. On January 7, 1927, said defendants filed their affidavit for appeal, pursuant to which the present appeal in this cause is being prosecuted. Such other facts as are pertinent, if any, will appear in the opinion.

I. The initial question relates to the jurisdiction of this court, and involves the amount in dispute only, which amount, exclusive of costs, must exceed the sum of seventy-five hundred dollars to vest jurisdiction in this court.

The petition for the writ of mandamus in aid of execution was filed December 1, 1926. It sought the aid of the court to constrain the city and its officers to assess and collect taxes to satisfy a judgment recovered against the city for the death of Frank Pyle, due to its negligence. The judgment was rendered July 26, 1926, in the sum of $7500. From its entry it concomitantly drew six per cent interest. While the petition for mandamus was based on the money judgment recovered, it was in reality a separate action. Interest had then become due, so that the judgment, principal and interest, exceeded $7500. The petition for mandamus operated not merely upon the judgment, but on the judgment and interest united. Thus the amount in dispute, when the petition for mandamus was filed, was the united judgment and interest. We rule that the amount in dispute exceeded the sum of $7500, so as to vest jurisdiction in this court. The facts here stated are not analogous to the facts found in Schwyhart v. Barrett, 223 Mo. 497, 122 S. W. 1049. We are not without authority for our position. State ex rel. Fisk v. Police Jury, 34 La. Ann. 95, involved the levying of a tax to pay judgments. The court tersely said: "The amount of taxes to be levied under the judgment appealed from must be sufficient to satisfy said judgments in principal, interests and costs. Now, the interests allowed by said judgments, added to the aggregate capital thereof, make up an amount which far exceeds one thousand dollars, and that amount being the amount in dispute in this controversy, vests this court with jurisdiction." [Dryden v. Wyllis, 51 Iowa, 534, 1 N. W. 703; State v. Boner, 57 W. Va. 81, 49 S. E. 944; Heather v. City of Palmyra, 276 S. W. 872.] We deem it unnecessary to discuss the relativity of the costs to the amount in dispute.

456

II. The alternative and peremptory writs of mandamus ordered appellants, without further excuse or delay, to proceed to make a levy, or successive levies, sufficient to satisfy the $7500 judgment and six per cent interest thereon from July 26, 1926, and accrued costs of $169.60, as well as the costs of this mandamus proceeding, and to pay same to respondent herein, or his attorneys of record, until said judgment, interest and costs are fully paid.

It is the contention of appellants that the writs exceed the authority of the court and should be quashed. One phase of the inquiry involves the construction of Sections 11 and 12, Article X, of the State Constitution. Section 11 provides: "Taxes for county, city, town and school purposes may be levied on all subjects and objects of taxation; . . . For city and town purposes the annual rate on property . . . in cities and towns having less than ten thousand and more than one thousand inhabitants, said rate shall not exceed fifty cents on the hundred dollars valuation; . . . " Section 12 provides in part, in substance, that no city shall be allowed to become 'indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose.

It is evident, we think, that Sections 11 and 12 aforesaid are to be construed together. They comprise integral parts of a system of financiering and are so closely akin as to their subject-matter as to be correlated. Section 11 is a limitation to the tax rate that the municipality is permitted to levy, while Section 12 limits the amount of indebtedness. They are so closely related that the State of Kentucky in its Constitution has seen fit to unite in one section their identical meaning and import. This court, through BARCLAY, J., in Lamar v. City of Lamar, 128 Mo. 188, l. c. 216, 26 S. W. 1025, discussing the sections, said:

"The two sections are component parts of a system of financiering which experience pointed out as furnishing a safer course than had been previously followed. Two great objects were in view, and each of the sections treat of one of them. One object was to limit the rates of taxation for raising the annual revenue required for local purposes; the other to limit the power to incur indebtedness beyond the annual income and revenue provided for any one year. Section 11 deals with rates of taxation for annual revenue which may be applied by the local authorities to meet 'the ordinary and current expenses' of the local government. [Book v. Earl, 87 Mo. 252.] Section 12 deals with the subject of indebtedness, its limitations, and the ways and means to meet it when assumed."

We advert to the contention of appellants that the writs in their scope constrain a rate of taxation in excess of the rate fixed by the Constitution, that is, in excess of fifty cents on the hundred dollars valuation. It is evident the Section 12 comprehends and is limited to relations arising out of contract. Appellants insist, however, that, notwithstanding this judgment is based on tort, the inhibition of Section 11 applies to judgments in tort as well as in contract. It is clear that this was not the purpose of the constitutional provisions. The language used demonstrates that they were not written and enacted to exempt municipalities from responsibility for tortious acts, but as a due guard to improvidence and thoughtlessness. We are satisfied that the sections apply only to an indebtedness resulting from contractual relations and that they are not relevant to a judgment obtained against a municipality for a pure tort. It would serve no purpose to rehearse the reasoning in the well-considered cases of Conner v. Nevada, 188 Mo. 148, 86 S. W. 256, 107 Am. St. 314, and Menar v. Sanders, 183 S. W. (Ky.) 949. See also State ex rel. Poole v. Willow Springs, 183 S. W. (Mo.) 589; Flagstaff v. Gomez, 242 Pac. (Ariz.) 1003; Bloomington v. Perdue, 99 Ill. 329; Lorence v. Bean, 18 Wash. 36, 50 Pac. 582; Gray's Limitations of Taxing Power and Public Indebtedness, 2089.

III. Appellants cite Section 1685, Revised Statutes 1919, as controlling. It reads: "Whenever an execution, issued out of any court of record in this State, against any incorporated town or city, shall be returned unsatisfied, in whole or in part, for want of property whereon to levy, such court at the return term or any subsequent term thereof shall, by writ of mandamus, order and compel the chief officer, trustees, council and all other proper officers of such city or town, to levy, assess and collect the annual taxes in such town or city from year to year, as occasion may require, within the constitutional limits, and order the same, when collected by the proper officer or officers, to be paid to the execution creditor, his agent or assigns, except such amount as may be necessary to pay the reasonable salary allowed by the law to the mayor, council, assessor, marshal, constable, attorney and a reasonable police force of any such town or city."

Suits against municipalities, based on negligence, involve wrongful acts, whether of omission or commission. It was said in Conner v. Nevada, supra: "A city cannot escape liability from an obligation arising ex delicto on the ground that its indebtedness has already reached the constitutional limit." Again it was there said: "Then when we turn again to the clause in our Constitution on which ap-

pellant relies, we see that it refers only to the contracting of debts, and makes no reference to liability for torts; it leaves that matter as the common law left it.'' To what then has the statute reference? It speaks of constitutional limits, but it is evident from the cases in this and other states that the Constitution does not limit the rate of taxation where a tort is involved. Moreover, municipalities should not escape responsibility for their wrongful acts. Any other construction of the statute might permit them to so escape, and would, if collection of taxes for that purpose was thwarted. The constitutional limitation, as we have held, refers only to debts arising out of contractual relations, leaving the matter as it was at common law.

Appellants further say that, by virtue of Section 1685, there must be excepted from the taxes collected an amount necessary to pay the reasonable salary allowed by law to the officers, and to a reasonable police force. This provision has reference to the taxes levied for the general and incidental expenses of the ordinary business of the city, which must be paid, if at all, from the taxes levied and collected within the constitutional limits. Consequently, it has no reference to taxes collected to pay a judgment based on a tort. For a debt or a matter arising from contractual relations, a municipality may not be constrained to assess and collect taxes beyond the constitutional limits; but as the Constitution does not apply to claims purely tortious, such right obtains. The rights of a judgment creditor to enforce the collection of the judgment, based on the negligent acts of a municipality, must expressly or by clear inference be denied him. We do not think the statute noted has reference to judgments *ex delicto* obtained against a municipality, for it does not meet the foregoing requirements. It operates only on matters involving contractual relations. Therefore neither the alternative nor the peremptory writ were objectionable in those regards.

IV. Appellants say that the alternative writ commanded the immediate levy and collection of a tax, sufficient to pay the judgment, and the peremptory writ ordered the same to be done within thirty days.

It is evident, we think, that under the statutes the tax to pay the judgment could not be collected immediately or within thirty days, as the writs provide. It may be that a levy could be made, but we think the collection of the taxes should take the orderly and regular course. While the levy is made previously, the tax becomes collectible in the fall and delinquent on January first of each year. Until then we see no provision in the law authorizing suit and the collection of the taxes. The court in this regard exceeded its authority. In substance, the command to the appellants should be to proceed to levy, assess and collect, in addition to the regular rate

of tax assessment for general and incidental expenses of the city within the constitutional limits, a tax sufficient to pay said judgment and costs, and to do so from year to year, as the occasion requires, until said judgment and costs are paid, and that the same be paid respondent.

V. From the judgment rendered on July 26, 1926, after being refused an appeal by the trial court, appellants, on December 11, 1926, sued out in this court a writ of error. On argument and submission, this court, because the amount in dispute was not within its jurisdiction, transferred the cause to the St. Louis Court of Appeals for its determination. [Pyle v. University City, 1 S. W. (2d) 799.] Notice that the writ of error had been sued out was not served on respondent or his attorneys until March 21, 1927, nor did they have previous notice of it. As we are reversing the judgment and remanding the cause on another ground, we think the issuance of new alternative and peremptory writs should be postponed until a final determination of the cause reported in 1 S. W. (2d) 799. However, the situation as thus developed cannot in any wise be charged to respondent.

We therefore reverse the judgment and remand the cause, without prejudice to respondent, with directions to set aside and recall the alternative and peremptory writs and quash them, and, upon the final determination of the cause of Pyle v. University City, 1 S. W. (2d) 799, if the judgment is affirmed, to issue new writs in conformity with this opinion.

*Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.