STATE EX REL. AGNES EMERSON v. CITY OF MOUND CITY ET AL., Appellants.—73 S. W. (2d) 1017.

Court en Banc, July 17, 1934.

*Pyle & Vonderschmidt* for appellants.

704

*Pross T. Cross* and *Gerald Cross* for respondent.

STURGIS, C.—This is a suit in mandamus to compel the defendant city and its officials to levy and collect a special tax over and above its levy for ordinary city purposes and to use the proceeds of same when collected to pay and discharge a judgment in relator's favor against said city. The record discloses that relator, Agnes Emerson, brought suit in the circuit court against defendant city for damages for personal injuries and obtained a judgment for $10,000, which on appeal to this court was affirmed (Emerson v. Mound City, 26 S. W. (2d) 766). On the filing of the mandate of this court in the circuit court an execution was issued and returned uncollected. It is conceded that the judgment mentioned stands unpaid. No question is raised as to the pleadings or procedure in the present case. The petition and alternative writ asks that defendants be compelled to make a tax levy, in addition to the taxes levied for other purposes, of one hundred cents on the one hundred dollars valuation of the taxable property in the city, stated and conceded to be about $1,125,000, from year to year until the judgment and interest thereon have been fully paid and satisfied. The answer and return of defendants set up the defense that the defendants have no power or authority to levy and collect any such additional tax and are prohibited from doing so by Section 11, Article X, of the Constitution of Missouri. On the hearing it was admitted that defendant Mound City was at

the time a city of the fourth class, organized as such and having a population of about sixteen hundred. The court entered judgment on February 6, 1931, for plaintiff and ordered issued a peremptory writ of mandamus reciting the facts above stated and commanding and directing the defendants and their successors in office, "Upon the receipt of this writ and with dispatch and in due time and at the time of the first levy of taxes for city purposes hereafter, to assess and make and cause to be assessed and made a tax levy in addition to the taxes levied for other purposes in said city, of one hundred cents on the one hundred dollars of the assessed valuation of all of the property in said city, by law made taxable by said city, and successive levies in sufficient amounts from year to year thereafter until said judgment, interest thereon and costs incident thereto and the costs of this mandamus proceeding have been fully paid and satisfied and sufficient funds raised and made available therefor." The defendants have perfected their appeal to this court from this judgment.

The question presented for our determination is the validity of this judgment. Can a city of the fourth class having a population of less than ten thousand be compelled by mandamus to levy and collect an annual tax in excess of the usual statutory rate of fifty cents on the one hundred dollars valuation to be used for ordinary city purposes, in order to pay a valid judgment rendered in a personal injury action? The defendants claim that the judgment in question is void in commanding the city officials of Mound City to levy an annual tax in excess of fifty cents on the one hundred dollars valuation as being in contravention of the provisions of Section 11, Article X, of the State Constitution. The parts of said section material here read:

"Taxes for county, city, town and school purposes may be levied on all subjects and objects of taxation. . . . For county purposes the annual rate on property, in counties having six million dollars or less, shall not, in the aggregate, exceed fifty cents on the hundred dollars valuation. . . . For city and town purposes the annual rate on property in cities and towns having thirty thousand inhabitants or more shall not, in the aggregate, exceed one hundred cents on the one hundred dollars valuation; . . . *in cities and towns having less than ten thousand and more than one thousand inhabitants, said rates shall not exceed fifty cents on the hundred dollars valuation.* . . . Said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness."

In the omitted portions some exceptions are made as to the maximum rates specified, as, for instance, for erecting public buildings when

the increased rate is submitted to a vote, but such exceptions are not material here.

I. The contention of relator is that this provision of the Constitution fixing maximum rates has no application to a tax made necessary in order to raise sufficient money to pay and discharge a valid judgment against a municipal corporation rendered in a damage suit for personal injuries; that such constitutional limitation on rates of taxation apply to the payment of debts or obligations of the municipality arising in contract only, and not those arising in tort. Counsel for relator assert that "this court has repeatedly held that the limitation set out in Section 11 does not apply to obligations or judgments arising in tort," and cite in support thereof Heather v. City of Palmyra, 317 Mo. 1320, 298 S. W. 750; Heather v. City of Palmyra, 311 Mo. 32, 276 S. W. 872; State ex rel. Pyle v. University City, 320 Mo. 451, 8 S. W. (2d) 73; Conner v. Nevada, 188 Mo. 148, 86 S. W. 256.

Examining these cases in the order of their rendition, it will be found that Conner v. Nevada, supra, was a suit for damages for personal injuries in which the defendant city interposed as a *defense to plaintiff's recovering a judgment* against the city the constitutional limitation contained in Section 12 of Article X of our Constitution, which, so far as material, reads:

"No county, city, town, township, school district or other political corporation or subdivision of the State *shall be allowed to become indebted* in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be *allowed to be incurred* to an amount including existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein."

The omitted parts of this section contain provisions and exceptions to the maximum amount of indebtedness which municipal corporations may incur, which are not material to the question here presented.

The Conner case considered the constitutional limitation thereby placed on municipal corporations in "becoming indebted" or "incurring indebtedness" contained in said Section 12, and not the one in levying taxes contained in Section 11, in order to pay same. It was argued in that case that the rendition of a judgment for plaintiff in the amount sued for, or perhaps in any amount, would necessarily result in the city "becoming indebted" in an amount exceeding the income and revenue provided for the year without a vote of the people, and might in some cases result in "incurring indebtedness" in excess of five per cent of the taxable property. The court pointed

out, however, that the language of the limitation contained in that section in limiting cities and towns as to "becoming indebted" and "incurring indebtedness" had reference to debts and obligations *ex contractu*, implying voluntary action of the city, and did not apply to debts or obligations arising from tort and which are imposed on corporate bodies against their will. The court there said: "The clause of the Constitution in question deals with the subject of incurring indebtedness which arises *ex contractu* and which is far different in its nature from suffering liability for a tort. The language of Section 12 is that the city shall not be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. This language shows that it is indebtedness incurred by assent, agreement or contract. The word debt has a well recognized meaning in law distinguished from liability for damages. After a claim for damages is reduced to a judgment it becomes, in a technical sense, a debt, but it is a debt imposed by law, not one assumed by contract. What our Constitution aims to control is the action of the municipal corporation in the matter of contracting debts." After reviewing the authorities, this court reached this conclusion: "Thus it will be seen that the question now presented, although perhaps not heretofore expressly decided in this State, has received judicial consideration in other states which have similar constitutional limitations, and so far as the decisions have come to our notice they hold that for a neglect of duty of the kind now in question the city is liable (that is, a judgment may be rendered against it) even though it has reached the limit of its power to levy taxes and contract debts."

There is certainly nothing here to the effect that a judgment cannot be rendered against a defendant city unless it has the means, actual or potential, to pay the same. It needs no citation of authorities to show that it is no defense to a cause of action—no reason why a judgment should not be rendered—to show that the defendant has no property or funds, present or prospective, available for payment of the same. Obtaining a judgment and collecting it are two quite different things.

The case of Heather v. City of Palmyra, supra, is like this one in that it is a proceeding by mandamus to compel the levy and collection of a tax to pay a valid judgment against the city in a personal injury action. That case, however, does not involve the question of levying a higher rate of taxation than permitted by Section 11, Article X, of the Constitution. The court there took judicial notice that the defendant city of Palmyra had a population of about two thousand, that is, over one thousand and less than ten thousand, and the maximum rate of taxation permitted by Section 11, Article X, of

the Constitution limits the rate of taxation in cities of that size to fifty cents on the one hundred dollars valuation. The court ordered the city to levy *that rate* and to continue to do so until the judgment in question was fully paid. The court took notice that the statute followed the Constitution in this respect and authorized cities of this population to levy a rate of fifty cents but no more. The court said: "As a city with a population in excess of one thousand and less than ten thousand inhabitants, the limit of its levy for city and town purposes under the Constitution (Sec. 11, Art. X) was fifty cents on the one hundred dollars valuation. Under the terms of the various acts just mentioned, the Legislature did not undertake to limit, and did not limit the levy in cities under special charters, and having a population in excess of one thousand and less than ten thousand inhabitants. The court directed that a levy be made of fifty cents upon the one hundred dollars valuation."

It should be noted that the court there took notice that the State Legislature by the various acts of 1921 limited the rates of taxation then in force, by other legislative acts in conformity to the maximum limits fixed by the Constitution, to lower rates than thus permitted and that such lower rates and limitations were held valid in State ex rel. Sedalia v. Weinrich, 291 Mo. 461; 236 S. W. 872. This case of Heather v. City of Palmyra, therefore, holds that where a judgment is rendered in a tort action against a municipal corporation of this State and is not paid on execution being issued, mandamus will lie to compel the municipal authorities to levy an annual tax to pay such judgment *up to the limit authorized by statute*, which, in turn, is limited by Section 11, Article X, of the Constitution; but this case is no authority for holding that rates above these limits are permissible or valid when levied to pay judgments in actions for tort or otherwise.

It may also be that the remedy by mandamus in aid of executions in cases of this character exist independent of our statute, Section 1233, Revised Statutes 1929, providing a summary remedy for collecting judgments against cities and towns by taxation, and is not hampered by its limitations (61 C. J. 576; Hambleton v. Town of Dexter, 89 Mo. 188, 1 S. W. 234), but the procedure had in the Heather case was under such statute, and such statute by its terms applies to all executions issued out of courts of record without reference to the kind of action resulting in the judgment, whether in tort or on contract. Such statute, however, does limit the power of the court to order and compel the municipal authorities "to levy, assess and collect the annual taxes in such town or city from year to year, as occasion may require, *within the constitutional limits.*" Is there any reason for holding that this section of the statute does not apply to executions issued on judgments against towns and cities rendered in actions for tort such as the one now in question? If it

does so apply, then the taxes ordered to be levied must be within the constitutional limits. We may also note that all causes of action, whether on contract or sounding in tort, are merged in the judgment and the judgment itself becomes a debt of record of the highest form and executions or mandamus proceedings in aid of same are to collect the judgment and not the cause of action merged in same. [St. Louis Type Foundry Co. v. Jackson, 128 Mo. 119, 124, 30 S. W. 521; Cooksey v. Railroad, 74 Mo. 477; Miller v. Hoover, 121 Mo. App. 568, 575, 97 S. W. 210; 33 C. J. 1056.] A judgment is a debt, although obtained in an action for personal injuries. [Anniston v. Hurt, 140 Ala. 394, 103 Am. St. Rep. 45.] It would seem, therefore, to make no difference whether the cause of action merged in the judgment against the city on which an execution is issued and returned unsatisfied is based on tort or contract when it comes to using mandamus to enforce levying of taxes with which to satisfy the execution, and, regardless of the nature of the cause of action back of the judgment, the rate of taxes to be levied must be within the constitutional limits.

The second case of Heather v. City of Palmyra, 317 Mo. 1320, 298 S. W. 750, was a proceeding to punish for contempt in refusing to obey the peremptory writ of mandamus to levy the fifty-cent tax as ordered in the previous case. It merely holds that all constitutional questions were settled by the award of the peremptory writ. It does not deal with a tax levy in excess of the constitutional limit.

The case of State ex rel. Pyle v. University City, 320 Mo. 451, 8 S. W. (2d) 73, lends support to relator's contention that the limitation as to rates of taxation contained in Section 11, Article X, of our Constitution, as well as the limitation as to becoming indebted or incurring indebtedness contained in Section 12 thereof, has no application to debts represented by judgments obtained in actions in tort, such as for personal injuries. That case, like this one, was a proceeding in mandamus to compel the levy of a tax in addition to and over and above the ordinary levy of fifty cents on the one hundred dollars valuation for city purposes in order to pay a judgment for personal injuries in relator's favor against a city of the fourth class. The court refers to Conner v. Nevada, 188 Mo. 148, 86 S. W. 256, and like cases from other states holding that the constitutional limitation of Section 12, Article X, as to becoming indebted or incurring indebtedness does not apply to actions in tort, and holds that the two Sections 11 and 12 relate to the same general subject of revenue and taxation and should be correlated and construed together. The court then holds that neither the provisions of Section 11, limiting rates of taxation of municipal corporations, nor those of Section 12, limiting the amount of indebtedness that may be incurred, have any application to judgment indebtedness arising in tort. To quote from that opinion: ''It is evident that Section 12 comprehends and is limited to

relations arising out of contract. Appellants insist, however, that, notwithstanding this judgment is based on tort, the inhibition of Section 11 applies to judgments in tort as well as in contract. It is clear that this was not the purpose of the constitutional provisions. The language used demonstrates that they were not written and enacted to exempt municipalities from responsibility for tortious acts, but as a due guard to improvidence and thoughtlessness. We are satisfied that the sections apply only to an indebtedness resulting from contractual relations and that they are not relevant to a judgment obtained against a municipality for a pure tort. It would serve no purpose to rehearse the reasoning in the well-considered cases of Conner v. Nevada, 188 Mo. 148, 86 S. W. 256, 107 Am. St. Rep. 314, and Menar v. Sanders, 169 Ky. 285, 183 S. W. 949, L. R. A. 1917E, 422. [See, also, State ex rel. Poole v. Willow Springs (Mo.), 183 S. W. 589.]'' Other cases are cited which will be found to be like Conner v. Nevada, supra, dealing with the limitation in Section 12, Article X, of the Constitution relating to becoming indebted.

In much the same way the court disposes of Section 1685, Revised Statutes 1919 (now Sec. 1233, R. S. 1929), which limits the rate of taxation to be imposed by mandamus in aid of executions against incorporated cities and towns to such as shall be ''within the constitutional limits,'' by holding that such statute applies only to executions on judgments arising *ex contractu* and not to those founded on tort. The court cites only the Conner case, supra, and says of this statute: ''Consequently it has no reference to taxes collected to pay a judgment based on a tort. For a debt or matter arising from contractual relations, a municipality may not be constrained to assess and collect taxes beyond the constitutional limits; but as the Constitution does not apply to claims purely tortious, such right obtains. . . . We do not think the statute noted has reference to judgments *ex delicto* obtained against a municipality, for it does not meet the foregoing requirements. It operates only on matters involving contractual relations. Therefore neither the alternative nor the peremptory writ were objectionable in those regards.''

A similar ruling was made by this court in State ex rel. Poole v. Willow Springs (Mo.), 183 S. W. 589, not published in our official reports. That also was a suit in mandamus to compel the levy by the city authorities of a special tax in addition to the ordinary rate of fifty cents, the constitutional limit, to pay a judgment in tort (conversion) rendered in favor of relator against the defendant, a city of the fourth class. The court there said: ''We are therefore confronted with the question as to whether relator is entitled to a peremptory writ of mandamus against defendant, requiring it to make a special levy for the collection of sufficient revenue to pay the debt, interest, and costs due plaintiff, as aforesaid. It is conceded that plaintiff's

judgment against defendant is based upon a tort. [107 Mo. App. 166, 80 S. W. 1196.] Sections 11 and 12 of Article X of our Constitution, limiting the rate of taxation to cities of this character at fifty cents on the $100 valuation, have no application where the city is sued for a tort and judgment rendered accordingly. Where judgment has been rendered against defendant for conversion, it is the duty of the latter to levy and collect sufficient revenue to pay said judgment, interest, and costs, although the city may be levying and collecting the full amount provided by the Constitution for the salaries of its officers and current expenses of said city. [Conner v. City of Nevada, 188 Mo. l. c. 153, 86 S. W. 256, and cases cited.] '' Conner v. Nevada, supra, is the only case cited to support this ruling and, as we have seen, that case decides no more than that when a town or city is sued in a tort action it is no *defense to obtaining a judgment* against the municipal corporation that a judgment for plaintiff would create a debt prohibited by the Constitution, for that the city has no power to become indebted in excess of the income and revenue provided for the year, without a vote of the people, which would be the effect of the judgment prayed for; or that such judgment, when added to the existing indebtedness, would result in the city becoming indebted in excess of five per cent of the taxable property of the city, which also the Constitution forbids.

This ruling in the Conner case finds support in most, if not all, the cases and it is settled law that in actions for tort, the constitutional or statutory limitation against becoming indebted or incurring indebtedness beyond a fixed limit does not apply as a defense to obtaining judgments in tort actions. [44 C. J. 1135; Gray, Limitations of Taxing Power & Public Indebtedness, sec. 2089; 44 C. J. 1127; Note in 37 L. R. A. (N. S.) 1097; Rice v. Des Moines, 40 Iowa, 638; Schuldice v. Pittsburg, 251 Pa. St. 28, 95 Atl. 938; Keller v. Scranton, 200 Pa. St. 130, 86 Am. St. Rep. 708; City of Bloomington v. Perdue, 99 Ill. 329.] Lorence v. Bean (Wash.), 50 Pac. 582, does not support relator's contention.

It is generally held, however, that the limitation contained in Section 12, Article X, of the Constitution, that the total amount of indebtedness ''including existing indebtedness'' that is ''allowed to be incurred'' shall not exceed five per centum of the value of the taxable property, does include in the term ''existing indebtedness'' judgments against the city in actions for tort. [44 C. J. 1123; Gray, Limitations of Taxing Power & Public Indebtedness, sec. 2090; Stone v. Chicago, 207 Ill. 492, 69 N. E. 970.] The distinction seems to be that before a judgment is rendered an action in tort does not present a barrier to the city becoming indebted beyond the constitutional limit, but that after the judgment is rendered it becomes existing indebtedness and is a barrier to incurring further indebtedness.

Except, therefore, that the rendition of a judgment in actions for tort is not "becoming indebted" or "incurring indebtedness" beyond the constitutional limit, such judgment itself, the same as bonds, judgments *ex contractu,* or other obligations of the city, constitutes a debt of the city for all other purposes and is on an equality when resort is had to taxation to pay same.

It is also true that judgments in tort are assignable debts, though the cause of action is not assignable. [33 C. J. 1058; 34 C. J. 637, sec. 977.] Suppose a person is the owner of two judgments against the city, one in contract and the other in tort, and he must resort to mandamus to compel the levy of taxes to pay both. Can the city interpose the tax rate limitation as a defense against the judgment *ex contractu,* but not so as to the judgment in tort?

That the limitation contained in Section 11, Article X, of the Constitution as to the annual rates of taxation which may be levied for municipal purposes is self-enforcing and applicable to "taxes of every kind or description, general or special," with no exceptions whatever, except the ones made by the section of the Constitution itself not applicable here, has been held many times by this court, and it makes no difference that the debt is valid or a judgment had been rendered. Book v. Earl, 87 Mo. 246; Arnold v. Hawkins, 95 Mo. 569, 8 S. W. 718; Black v. McGonigle, 103 Mo. 192, 15 S. W. 615; State ex rel. Hill v. Wabash Ry. Co., 169 Mo. 563, 576, 70 S. W. 132; Board of Commissioners v. Peter, 253 Mo. 520, 537, 161 S. W. 1155, where the court said: "That provision of the Constitution may neither be struck down by the General Assembly nor ignored, nor evaded by deft indirection. It stands there as an insurmountable barrier to an increase in taxation for county purposes beyond the maximum rate of thirty-five cents on the one hundred dollars. It goes further. It interprets itself. It declares that the restriction shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness. Looked at from every standpoint, we have come to rate it as our bounden duty to so write the law." In Arnold v. Hawkins, supra, an injunction case, the taxes involved were levied to pay judgments and the court said: "In this case it appears from the agreed facts that the county has levied and plaintiff has paid a tax of fifty cents on the one hundred dollars valuation for county purposes. . . . Indeed it (the tax in question) cannot be a tax for any purpose for which a tax in excess of the fifty cents on the one hundred dollars valuation can be levied. It is, therefore, clearly within the constitutional prohibition, and is an illegal tax, the collection of which should be enjoined. What remedy the judgment creditors may have, presents a question not before us on this appeal. It is enough to know that plaintiff has paid all the taxes

that can be levied on his property for county purposes for the year in question. It is not his duty to see how it shall be appropriated or applied." And in Black v. McGonigle, supra, this court said: "The county court had already levied fifty cents on the $100 valuation and apportioned the revenue to be collected to the various funds. That levy reached the constitutional limit, and the additional fifteen per cent was levied in plain violation of the Constitution, and its collection should be restrained. Enough has been heretofore said upon the subject. [Book v. Earl, 87 Mo. 246; Arnold v. Hawkins, 95 Mo. 569.] It can make no difference that this tax was levied pursuant to an order of the circuit court, for that order could not have the effect to make the taxpayer liable for an illegal and unconstitutional tax."

This court in Strother v. Kansas City, 283 Mo. 283, 223 S. W. 419, where the Legislature imposed on Kansas City the burden of supporting the Metropolitan Police and the city attempted to levy a two-cent tax above the constitutional limit to meet such otherwise unbearable expense, held that such exercise of the legislative power had been held valid in State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S. W. 524, and State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S. W. 591, but said: "But it has not been decided that the constitutional limitation on taxation may be exceeded to maintain a police department *or for any other purpose*; but that those limitations cannot be exceeded has been declared, we believe, in every decision upon the subject. [State ex rel. v. Stephens, 146 Mo. 662; State ex rel. v. Railroad, 169 Mo. 563.] . . . Cities cannot exceed, for any purpose, the limit of taxation fixed by Section 11, Article X, of the Constitution, because the section says the rates allowed 'shall apply to taxes of every kind and description, whether general or special,' except those levied to pay past indebtedness."

The argument is made here and was so made in the cases of State ex rel. Poole v. Willow Springs (Mo.), 183 S. W. 589, and State ex rel. Pyle v. University City, 320 Mo. 451, 8 S. W. (2d) 73, that unless a tax in excess of the constitutional limit can be levied the relator's judgment cannot be collected as the city has and will continue to levy the full limit of fifty cents on the one hundred dollars valuation and all the proceeds of such tax have been and will continue to be necessarily used to pay current expenses, leaving no surplus to be applied on relator's judgment. But, as said in the McGonigle case, that question is "not before us on this appeal. It is enough to know that plaintiff has paid all the taxes that can be levied on his property for county purposes for the year in question." It is not the law that in rendering a judgment for a plaintiff that the court or the law guarantees a method or means of collecting the same. To create a debt or become indebted "is not dependent upon the ability of the

creditor to enforce his claim by a judgment for money.'' [44 C. J. 1135; Chester v. Carmichael, 187 Cal. 287, 201 Pac. 925.] In giving relator a judgment against the defendant city the court determined its liability, but the collection of the same is a different proposition. It is sometimes said that necessity knows no law, but that is not true in levying taxes to collect judgments, whether arising from contract or in tort. [Strother v. Kansas City, 283 Mo. 283, 296, 223 S. W. 419.] In Barnard & Co. v. Knox County, 105 Mo. 382, 389, 16 S. W. 917, this court said: ''We have held that a county court cannot levy a tax in excess of the fifty cents for any purpose, except for the purpose of erecting public buildings, and for the purpose of paying indebtedness existing at the date of the adoption of the Constitution. . . . The language (of the constitutional limitation) just quoted is clear and explicit and construes itself; it is broad and comprehensive as to the character of the indebtedness. It includes indebtedness created in any manner or for any purpose. This strong and comprehensive language admits of no distinction between debts created by a county court and debts created by law.'' See Gray, Limitations of Taxing Power and Public Indebtedness, section 2059, as to there being no distinction as to voluntary and compulsory debts. In this same work, Section 2016, the law is stated thus: ''Where a judgment has been recovered against a city, county or other municipal or governmental subdivision, the right of the creditor to compel the levy of a tax to pay his judgment must be exercised in subordination to the constitutional limitation on the tax rate. However worthy his debt, he cannot compel the levy of a tax to pay it if such levy would increase the taxpayer's liability beyond the constitutional rate. Accordingly it was held in Missouri that a taxpayer, who has already paid the full amount of county tax allowed by the Constitution, might restrain the levy of another tax by the county to pay 'county judgments' or warrants.'' Arnold v. Hawkins, supra, is cited, together with decisions of other states.

Referring again to the two cases in this State upholding relator's contention, State ex rel. Poole v. Willow Springs and State ex rel. Pyle v. University City, supra, we have noted that the first one relies solely on Conner v. Nevada, 188 Mo. 148, 86 S. W. 256, which deals solely with the limitation on the power to become indebted or incur indebtedness and not with the limitation on tax rates that may be levied by cities. The reasoning of that case is that the two constitutional limitations should be construed together and the same exceptions as to tort judgments be read into each. The next case of State ex rel. Pyle v. University City, supra, follows the same line of reasoning and again cites Conner v. Nevada, supra, and other like cases dealing with the limitation as to becoming indebted. The only case cited that is really in point is Menar v. Sanders, 169 Ky. 285,

183 S. W. 949, L. R. A. 1917E, 422, which is a case much like this and involves constitutional limitations much like ours both as to limiting annual rates of taxation and the amount of indebtedness that may be incurred, both such limitations being embodied in a single section of the Kentucky Constitution. Although that case, as does this one, involved the constitutional limitation of rates of taxation allowed to be levied, the court cites only cases, including Conner v. Nevada, supra, from this State, involving the other limitation as to becoming indebted or incurring indebtedness and makes this statement: The cases here cited "show that the defense of the city's indebtedness could not have been relied on to defeat the recovery of damages obtained by appellee in the action first brought by her, but that they do not hold that the fact that a city had already levied a tax reaching the constitutional limit cannot be relied on to prevent the satisfaction of such judgment. We confess our inability to see any force in this argument. The point attempted to be made is a distinction without a difference. The contention is self-destructive. Manifestly, if the city could not have *defeated the recovery* of the judgment upon the ground that the indebtedness of the city already reached the maximum limit allowed by the Constitution, it cannot *defeat a satisfaction* of the judgment upon the ground that its taxing power had already been exercised to the limit fixed by the Constitution." We cannot agree either to the court's reasoning or the statement of the law. We cannot agree that a defendant cannot defeat the satisfaction of the judgment on a ground that could not defeat the obtention of the judgment. If that be the law, then, as defendants are required to interpose at the trial all their available defenses against obtaining a judgment, the obtention of a judgment either *ex contractu* or in tort against a city is conclusive that no constitutional limitation has been violated. That is not the law in this State as held in Arnold v. Hawkins, supra; Black v. McGonigle, supra, and many other cases; and we think there is a distinction with a difference in the limitation as to tax rates that may be imposed on taxpayers and the limitation on the amount of indebtedness that may be incurred by a city, though both relate to the general subject of revenue and taxation and are "component parts of a system of financing" adopted in this State, as said in Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 188, 26 S. W. 1025, since it was further said in that case that: "Two great objects were in view, and each of the sections treats of one of them. One object was to limit the rates of taxation for raising the annual revenue required for local purposes; the other, to limit the power to incur indebtedness beyond the annual income and revenue provided for any one year. Section 11 deals with rates of taxation for annual revenue which may be applied by the local authorities to meet 'the ordinary and current expenses' of the local government. . . . Section 12 deals with

the subject of indebtedness, its limitations, and the ways and means to meet it when assumed.'' It was also there held that both limitations must be, if possible, given full force and effect.

The very basis for holding, as we did in Conner v. Nevada, supra, that actions in tort against cities or towns and a possible judgment thereon are not subject to the defense that thereby the indebtedness of the city might or would be increased beyond the limits fixed by Section 12, Article X, of the Constitution, is that the language used precludes such a construction in that the language is that ''no county, city . . . shall be allowed to become indebted,'' nor shall ''any indebtedness be allowed to be incurred,'' beyond the specified limits. ''This language,'' said the court, ''shows that it is indebtedness incurred by assent, agreement or contract,'' and not a liability imposed by law against its consent. There is no such language or any language used in the constitutional limitation of rates of taxation used in Section 11 of Article X showing or indicating that it does not apply to indebtedness of a municipality represented by a judgment in tort. In fact, indebtedness or debt is not mentioned in this Section 11 and payment of judgments or indebtedness is only indirectly connected therewith because of the fact that taxation is the chief source of revenue for that or any other purpose. The annual rates of taxation allowed and limited are ''for county, city . . . purposes'' and are chiefly to pay current expenses and keep the city on a cash basis; and it is expressly provided that ''said restrictions as to rates shall apply to taxes of every kind and description, whether general or special.'' By what process of reasoning can we read into this limitation of rates the words ''except to pay judgments in tort''?

There is certainly also this difference in the two limitations: To allow the defense in a trial of a personal injury action that a judgment would increase the city's indebtedness beyond the amount fixed by Section 12, Article X, which would necessitate a separate trial of that issue involving an inquiry into the ''income and revenue provided for the year'' along with the merits of the case, shows the impracticability of trying such issue in the suit for damages before a jury. That was a good reason for excluding such defense in Conner v. Nevada, supra. Our conclusion is that there is nothing in the case of Conner v. Nevada, supra, supporting the ruling in State ex rel. Poole v. Willow Springs and State ex rel. Pyle v. University City, supra, and these cases should not be followed.

■ II. If we are wrong in the foregoing holding that the limitation in Section 11, Article X, of the Constitution as to tax rates applies to the collection of judgments against cities and towns in personal injury actions by mandamus in aid of an execution therein, there is another reason why mandamus should not be granted to

compel the city authorities of Mound City to levy a tax in excess of the constitutional limit of fifty cents on the one hundred dollars valuation of the property therein. The right to compel such extra levy proceeds on the theory that, except for such constitutional limit, the city has the right and it is its duty to levy such extra or special tax, in addition to the usual fifty-cent levy, however large the rate levied, provided it is reasonably necessary in order to pay such judgment, interest and costs. The judgment appealed from directs a levy of one hundred cents on the one hundred dollars valuation in addition to the usual fifty-cent levy to pay current expenses, but had there been a judgment in relator's favor for $20,000, or two such judgments for $10,000 each instead of one, the extra rate would be two hundred cents on the one hundred dollars valuation, and so on without limit. If the city has such authority and duty, it should not have waited for the compulsory process of the court. The question then arises as to where and how the city obtains this unlimited authority as to tax rates.

This leads us to observe that cities and other like municipal corporations do not derive their power and authority to levy taxes for municipal purposes directly from the Constitution. The power to levy and collect taxes is a legislative power (61 C. J. 552 and 554) vested by the Constitution in the General Assembly, popularly called the Legislature. The State Constitution, other than vesting all legislative power in the Legislature, only limits the taxing power which the Legislature may vest in municipal corporations as branches of the sovereign governing power. Cities and like municipal corporations have no inherent power to levy and collect taxes, but derive their powers in that respect from the lawmaking power. In 6 McQuillin Municipal Corporations (2 Ed.), section 2523, page 275, the law is stated thus: "The taxing power belongs alone to sovereignty. No such power inheres in municipal corporations. This principle is universally recognized. Therefore as municipal corporations have no inherent power of taxation, consequently they possess only such power in respect thereto which has been granted to them by the Constitution or the statutes. . . . It should never be left to implication unless it be a necessary implication." The grant relied upon must be evident and unmistakable, and all doubts will be resolved against its exercise, and in favor of the taxpayer." [See, also, 44 C. J. 1261.] The Constitution, being the supreme law, may and does impose restrictions and limitations on this legislative power, binding alike on the Legislature, the courts, and on municipal corporations. [61 C. J. 152, 153; 44 C. J. 1261, 1262, and Missouri cases cited; Brooks v. Schultz, 178 Mo. 222, 226, 77 S. W. 861; State ex rel. Sedalia v. Weinrich, 291 Mo. 461, 469, 236 S. W. 872; State ex rel. Van Brown v. Van Every, 75 Mo. 530, 537; State ex rel. Zo-

ological Board v. City of St. Louis, 318 Mo. 910, 922-924, 1 S. W. (2d) 1021; State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 894, 2 S. W. (2d) 713.] In this last case the court said: "All legislative power, subject to certain limitations, is granted to the General Assembly by Section 1, Article IV, of the Constitution. Yet it is held that the power to levy taxes is inherent in the legislative body, independent of any constitutional grant; it is absolute and uncontrolled except as specifically limited in the Constitution. [Glasgow v. Rowse, 43 Mo. l. c. 489; In re Sanford, 236 Mo. l. c. 684.] Article X of the Constitution fixes certain restrictions upon the method of imposing taxes, the agencies by which it is done, and the subjects of taxation. Section 1 of that article, providing that the General Assembly may exercise the taxing power for state purposes, adds nothing to the inherent legislative authority." Article X of the Constitution deals with revenue and taxation and Section 1 thereof provides: "The taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under *authority granted to them* by the General Assembly, for county and other corporate purposes." Section 10 then provides: "The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Sections 11 and 12 are the ones we have been discussing as placing limitations on rates of taxation and on the power to incur indebtedness. In the Brooks case, supra, this court said: "The proposition is that Section 11 of Article 10 confers directly on counties, school districts, cities, and towns, authority to levy taxes to the limit therein specified; that that authority they may exercise independent of the will of the General Assembly, and that, in addition thereto, they may impose such taxes as the General Assembly may authorize. This is a misconception of that section. There is no language therein which is susceptible of the meaning that governmental power is conferred on counties, school districts and municipal corporations independent of the Legislature. The first sentence in the section only points out the character of property subject to taxation, and lays a restriction in the matter of assessing its value; all the rest of the section (fixing maximum rates) is negative in form and is in effect a declaration that beyond a certain limit, taxation shall not go; the provisos, though in form permissive, are but exceptions to the restrictions which they follow." In this last-mentioned case the Legislature by an act therein referred to had attempted to authorize cities of the third class to levy a tax of two cents on the one hundred dollars valuation for the special purpose of establishing and maintaining a free public library. Cape Girardeau,

a city of the third class with about six thousand inhabitants, attempted to levy this two-cent tax in addition to the regular rate of fifty cents for city purposes. The court said that Section 11 of Article X limited the rate in cities of the size of Cape Girardeau at fifty cents on the one hundred dollars valuation and that: "The three sections, read together, mean that the General Assembly may authorize such corporations to levy taxes within the specified limits, but not beyond the limit unless otherwise in the Constitution specified. In the case before us, the city had already levied a tax of fifty cents on the one hundred dollars valuation of taxable property in its jurisdiction; that was the limit of its taxing power, and therefore this special tax of two mills on the dollar for library purposes is illegal," etc.

In State ex rel. Sedalia v. Weinrich, supra, the court said: "It was held in State ex rel. v. Van Every, 75 Mo. l. c. 537, that the limitations upon the taxing power of cities found in Section 11, Article X, of the Constitution are self-enforcing, but that the sections conferred upon a city no power to tax, that such power is derived 'from acts of the General Assembly and not directly from the constitutional provision we are considering.' . . . But the amount of the levy for current expenses cannot exceed the levy which is authorized by the Legislature, if the doctrine of the Van Every case is sound. That doctrine was unanimously re-announced in Brooks v. Schultz, 178 Mo. l. c. 227."

The Legislature has power to still further reduce and to restrict the rates of taxation specified as maximum rates by Section 11, Article X, but not to increase same in any manner or for any purpose (State ex rel. Johnson v. A., T. & S. F. Ry. Co., 310 Mo. 587, 594, 275 S. W. 932), and it may direct and compel such city to use a designated part of its annual revenues for a designated purpose for which the city receives a special benefit (State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S. W. 524; State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S. W. 591), but that does not give the city the power to levy a tax in excess of the constitutional limitation. [Strother v. Kansas City, 283 Mo. 283, 293, 223 S. W. 419; State ex rel. Zoological Board v. St. Louis, 318 Mo. 910, 1 S. W. (2d) 1021.]

Granting, therefore, that Section 11, Article X, of the Constitution fixing maximum rates of taxation for cities and towns is not applicable to rates which are necessary to pay judgments rendered in actions for torts, as is relator's judgment here, and that the rate which may be levied by Mound City is not restricted by either Section 11 or 12 of Article X, the further question must be determined whether the Legislature has granted such power. It is not enough to determine that the Legislature could grant to cities the size of Mound City, or to any municipal corporation, the power to levy a tax rate in excess

of the rates fixed by Section 11, Article X, but has it done so? [44 C. J. 1261, 1263; Federal St. & P. V. Pass. Ry. Co. v. Pittsburg, 226 Pa. 419, 75 Atl. 662.] "Among the legislative powers that may *not* be delegated is the power to assess taxes, except in the manner (and to the extent) authorized by the Constitution." [State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 904, 2 S. W. (2d) 713.] As said in State ex rel. Sedalia v. Weinrich, 291 Mo. 461, 469, 236 S. W. 872, "The question then is whether the Legislature has given authority under which a levy can be made which will raise more than ten per cent more than the levy for 1920 would have raised if collected. . . . So far as the language of the statute provides, therefore, the city council is without authority to levy a tax in excess of a sum equal to the tax of 1920 and ten per cent and, therefore, without power to levy the bond tax in question in this case. The decision in Calland v. Springfield, 264 Mo. 296, had the full concurrence of but two judges other than its writer. In addition it is distinguishable from the case at bar. It is not to be construed to hold that a city gets its taxing power directly from the Constitution."

It is incumbent on the person claiming that the city has such power to point out the specific statute or legislative act conferring this power. [Strother v. Kansas City, 283 Mo. 283, 291, 223 S. W. 419.] That has not been done and, from our own investigation, we think cannot be done. It is conceded that defendant Mound City is a city of the fourth class, and, having a population of only sixteen hundred, it could not be anything else. The section of the statute which vests in cities of the fourth class the power to levy taxes is Section 6948, Revised Statutes 1929. An analysis of that section, which is somewhat lengthy, shows that the city council, the lawmaking body of such cities, shall determine the population and if found to be less than ten thousand inhabitants, "the city council may levy on all subjects and objects of taxation for city purposes *not to exceed fifty cents* on the one hundred dollars valuation. Should the population be one thousand or less, said rate of levy shall not exceed twenty-five cents on the one hundred dollars valuation. The foregoing are *maximum rates which may be levied* in said cities and towns." The proviso of said section looks to a lower rate than the maximum of "shall not exceed fifty cents on the one hundred dollars valuation," leaving the lower rate to be subject to a vote fixing same "within the limits prescribed by the Constitution." This is the only statute we find conferring on cities of the fourth class, or any city the size of Mound City, the power to levy and collect taxes for municipal purposes. This statute not only does not give the city power to levy a tax rate exceeding fifty cents on the one hundred dollars valuation, but expressly prohibits a rate in excess of that amount. If, in face of this inhibition, the rule sometimes applies to cities and towns, that where

the Constitution or a statute imposes on a city or other municipal corporation the doing or providing something of advantage to the city, necessarily incurring an expense, the power to provide means to meet that expense will be implied, it cannot be applied here for the reason that the liability for torts such as personal injuries arising from negligence is not imposed by the Constitution or by statute, but by the general law of negligence applicable alike to all persons, natural or artificial. Statutory provisions similar to the one quoted relate to other cities and towns—cities of the third class, Sections 6830 and 6783, Revised Statutes 1929, and towns and villages, Section 7108, Revised Statutes 1929—but in no case has the Legislature shown a disposition to confer on municipalities the power to levy rates of taxation in excess of the limits fixed by Section 11, Article X, of the Constitution, in order to enable cities to pay judgments rendered against them in personal injury actions. When it does so, we may have to further consider whether Section 11, Article X, fixing maximum tax rates on municipalities, is binding on the lawmaking power or permits an exception in favor of judgments in actions for torts. It may be noted, however, that cities of the fourth class and others are given the power to issue bonds to pay judgments such as the one here by vote of the people. [Sec. 7003, R. S. 1929; Sec. 6835, R. S. 1929; Sec. 7304, R. S. 1929.] See, also, Sections 7217, Revised Statutes 1929 et seq., for legislation authorizing cities, etc., to become indebted, "contract a debt," in excess of the annual revenues provided for the year, etc.

In any event, the trial court reached a wrong conclusion in this case, as this court did in State ex rel. Poole v. Willow Springs, supra, and State ex rel. Pyle v. University City, supra, and those cases are disapproved and the judgment here is reversed.

PER CURIAM:—The foregoing opinion by STURGIS, C., in Division One is adopted as the opinion of the Court en Banc. *Frank, C. J., Gantt, Ellison* and *Atwood, JJ.,* concur; *Leedy, Tipton* and *Hays, JJ.,* dissent.