GERTRUDE LANGE, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41829—233 S. W. (2d) 641.

Division Two, November 13, 1950.

*Thompson, Mitchell, Thompson & Douglas, John O. Hichew* and *William G. Guerri* for appellant.

*John C. Casey, Gilbert Weiss* and *Roberts P. Elam* for respondent.

[641] TIPTON, J.—In the circuit court of the city of St. Louis the jury returned a verdict in favor of respondent and against appellant in the sum of $27,500.00. The amount of the verdict was reduced to $18,500.00 by a remittitur of $9,000.00 entered by respondent in response to an order of the circuit court.

The only assignment of error as stated by appellant in its brief is that "the verdict and judgment for damages in the sum of $18,500.00 is grossly excessive." During the oral argument of this case the court raised the question of its jurisdiction. The parties have filed additional briefs, at the court's suggestion, concerning the jurisdiction of this court.

Since we are a court of limited jurisdiction, our jurisdiction on the ground of the amount in dispute attaches when, and only when, the record of the trial court [642] affirmatively shows that there is involved, independent of all contingencies, an amount exceeding $7,500.00, exclusive of costs. Consequently, such jurisdiction must so appear *at the time the appeal is taken*; nothing that subsequently occurs may be invoked either to confer jurisdiction on this court or to deprive it of jurisdiction. McGregory v. Gaskill, 317 Mo. 122, 296 S. W. 123; Stuart v. Stuart, 320 Mo. 486, 8 S. W. 2d 613.

The motion for a new trial in the case at bar stated that the trial court erred in admitting and excluding certain evidence, in giving instructions at respondent's request, and in denying its request for

a directed verdict at the close of all the evidence. Thus, it clearly appears that this court had jurisdiction at the time the appeal was taken. We therefore hold we have jurisdiction of this appeal.

Is the judgment of $18,500.00 excessive? While the evidence is conflicting on this issue, we must consider only the evidence and inferences most favorable to the respondent. Hilton v. Thompson, 360 Mo. 177, 227 S. W. 2d 675.

The evidence most favorable to respondent in regard to her injuries is that she was a passenger on a bus operated by the appellant on February 24, 1948, and that while she was in the act of alighting from this bus the door suddenly closed, catching her and throwing her to the ground. The bus dragged her as far as eighteen feet. Prior to this injury she worked in the sewing room of the Karol Kell Garment Company and her average earnings amounted to approximately $132.00 per month. She was about 44 years old at the time of the injury.

Immediately after the accident she was taken to the City Hospital where her back was X-rayed. The X-ray failed to disclose any fracture but she was advised to remain there for observation. This she refused to do but went immediately to her family physician, Dr. Louis R. Wentzel, for further treatment. When she arrived there she was greatly confused and dizzy, and her physician thought she had possibly suffered ''some intracranial injuries * * * a mild concussion * * * a shaking of the brain; a jarring of the brain.''

An examination of respondent disclosed that she had sustained multiple lacerations, abrasions and contusions of her head, legs, ankle and back, and a severe large contusion of the left lower back near the hip joint. She complained of pain in her head, neck and back. The following morning her neck was so sore and stiff that she was unable to get out of bed. At the trial which was held twenty months later her neck was still stiff, with a grinding sensation when she moved her neck; she had pains in her back. She was still taking treatments from her family physician. She was in good health prior to the accident, though she was treated by this physician for fever about two years prior to the date of her injuries. On account of her injuries she was unable to work at her employment as a power machine operator or to do her house work.

On advice of her family physician she went to Dr. F. A. Pernod, a surgeon, about six months after she was injured, and he treated her regularly from that time up to the time of trial. Dr. Pernod testified that the respondent has and had extreme spasticity and rigidity of her neck and some spasticity and rigidity of her lower back; that he found the normal forward curvature of her neck to be obliterated so that her neck was "definitely straight" from the base of her skull to the top of her shoulders, with definite tenderness on pressure over the entire back of her neck, particularly low in the neck between the

sixth and seventh cervical vertebrae, and with any substantial movement of her neck productive of pain. His diagnosis was that she had a compression of the cartilagenous substance, called a "disc," between these two vertebrae. He further testified that the motion in her head and neck was limited to "about fifteen or twenty per cent of the columnar motion in her neck"; that the constant contraction of her neck muscles over the long period of time since her injury set up an inflammation known as "myositis" from which she would not improve, and that "she will have pain, lots of [643] pain, in her neck, throughout her life" from it, although the pain will vary in intensity and degree from time to time. He further testified that her lower back had shown some improvement and might show further improvement, but that she will have some discomfort and disturbance in it "throughout the remainder of her life" and that she had "approximately only fifty per cent of the normal amount of motion of her lumbar spine." Since he testified that the condition of her neck would not get any better and that the discomfort in her back would remain throughout her life, the jury was justified in drawing the inference that these injuries were permanent. He also testified that it was his opinion that she no longer could operate a power machine and that she was permanently disabled from doing that type of work.

Dr. S. A. Levey testified that he took X-rays of respondent's neck and spine on August 31, 1948, and on October 31, 1949, and the lateral and anterior-posterior X-rays taken by him of respondent's lumbar spine showed some small arthritic deposits on the anterior edges of the vertebrae in that region and also at the lower borders of the sacroiliac joints, but no fractures. He further testified that the lateral X-rays of her cervical spine showed a flattening of the normal cervical curve from the fourth cervical vertebrae downward, with the spine there practically straight instead of having a normal curve. These X-rays showed a decrease in the space between the bodies of the sixth and seventh cervical vertebrae and some irregular bone deposits at the anterior and posterior borders of those two vertebrae. It was his opinion that the irregular bone deposits might be caused by either inflammatory change, such as arthritis, or injury. He stated that since these conditions existed only in the area of those two vertebrae without similar conditions of the other vertebrae, it was his opinion that both the bone deposits and the damage to the intervertebral cartilage were the result of the injury; it was also his opinion that the straightening of her spine at that point was due to injury. He further testified that the arthritic condition in her lower back probably antedated her injury, but "the changes in the sixth and seventh cervical vertebrae are a separate entity entirely; they have nothing to do with arthritis."

Viewed in the light most favorable to respondent, her medical testimony was to the effect that her injuries to her cervical vertebrae were

permanent; while there may be some improvement in the lumbar region, still she would constantly suffer some pain there, varying in degree. The appellant's medical testimony conflicts in many respects with the medical testimony of respondent. The jury evidently believed the respondent's witnesses.

In considering whether a verdict is excessive there is no precise or objective standard to determine the monetary value of damages sustained by respondent. Each case must be considered upon its particular facts; having primarily a regard toward a reasonable uniformity of awards. We have carefully reviewed the cases relied upon by both parties to this case. In all of these cases the injuries are different from those in the case at bar except in the recent case of Osburn v. Kansas City Southern Ry. Co., 360 Mo. 813, 230 S. W. 2d 856, to which there is close similarity. By giving proper regard to uniformity of judgments, we think the judgment in this case is excessive by $3,500.00.

If the respondent will, within fifteen days from the date of the filing of this opinion, enter here a remittitur of $3,500.00, the judgment for $15,000.00, as of the date of the original judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded because of an excessive verdict. All concur.