**Betty SHANNON, Respondent,**

v.

**WAL–MART STORES, INC., Appellant.**

**No. WD 54603.**

Missouri Court of Appeals,
Western District.

June 23, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court July 28, 1998.

Application to Transfer Denied
Sept. 22, 1998.

---

Michael Jerde, Kansas City, for Appellant.

John Turner, Kansas City, for Respondent.

SPINDEN, Judge.

Wal–Mart Stores, Inc., appeals the circuit court's judgment for Betty Shannon in her lawsuit for her injuries suffered when boxes fell on her in one of Wal–Mart's Kansas City stores during 1995. Wal–Mart charges the circuit court with reversible errors concerning the court's instructions to the jury and the evidence it permitted of Shannon's multiple sclerosis which developed after the accident. We disagree and affirm the circuit court's judgment.

Shannon was injured on September 17, 1995, when boxes fell on her from an overhead display. She suffered a disc herniation which required surgery. She also suffered stiffness, numbness and tingling in her arms and legs, mild weakness in her right hand grip, and difficulties with balance and gait. Although Shannon's condition improved after surgery and physicians agreed that she could return to work in March 1996, she continued to have pain and stiffness in her neck, numbness, tingling and burning in her arm, and difficulty walking. New symptoms developed in April 1996, and physicians diagnosed her in December 1996 as afflicted by multiple sclerosis.

Before her diagnosis, Shannon sued Wal–Mart. Wal–Mart admitted liability, but it contested the amount of her damages.

Shannon did not claim that the accident caused her multiple sclerosis, and she did not ask for damages for multiple sclerosis treatments. During *voir dire*, Shannon and Wal–Mart advised the jury that Shannon was not asking for damages for her multiple sclerosis. Shannon told the jury panel, "There is no

claim in this case that the incident at Wal-Mart caused [Shannon] to develop multiple sclerosis[,] but she has multiple sclerosis." Wal-Mart reiterated this point during its opening statement.

Wal-Mart's expert, a practicing neurologist from the Kansas City area, testified that Shannon "made a substantial recovery following her surgery, but . . . she has continued to have some intermittent neck discomfort and . . . some mild impairment of function in [her] right upper extremity." He also testified that Shannon would have continuing problems with neck pain at work because her duties required long periods of sitting. He also testified that Shannon's dizziness and mental slowing were symptoms of multiple sclerosis and were inconsistent with cervical cord injury. He opined that the multiple sclerosis was not caused by the incident at Wal-Mart.

Shannon's treating physician agreed that the Wal-Mart accident did not cause the multiple sclerosis, but he said that her symptoms could be attributable to the accident or to multiple sclerosis. He said that he could not opine what percentage was attributable to either.

During closing arguments, both sides asserted that the jury should not award damages for Shannon's multiple sclerosis. Shannon's attorney said, "It would be wrong of me, and it would be dishonest of me[,] to have come to this courtroom and ask you to award damages to her for multiple sclerosis."

At the instruction conference, Wal-Mart again objected to Shannon's evidence concerning multiple sclerosis. On appeal, Wal-Mart complains primarily that the circuit court permitted Shannon's treating physician to testify:

[Shannon] has had ongoing intermittent discomfort in her neck and ongoing balance problems, ongoing right-hand burning and clumsiness and any exacerbation from her MS may make her more emotionally impaired to try to deal with not only the unpredictability of what can happen from her MS neurologically on top of, you know,

ongoing permanent problems and discomfort that she had from her initial injury.

. . . .

[I]f someone has an underlying neurological deficit to begin with, it's more difficult for her to handle other physical ailments. It may not just be MS, but it may be any other physical ailment. The other aspect of this is that someone who has an MS attack may be limited in what they can do. And in [Shannon's] case, any lack of activity, you know, long sedentary periods and so forth can actually make her neck stiffness pain worse as well as her gait problems. So what I'm saying is, if she has an MS attack that affects her in a significant degree, her lack of activity can actually make her initial symptoms from her neck and legs, [et cetera], more magnified.

Wal-Mart asked the circuit court to instruct the jury not to consider this evidence. The circuit court refused.

Wal-Mart also wanted the circuit court to modify Missouri Approved Instruction (MAI) 31.07, the damage instruction. The circuit court used MAI 31.07 to instruct the jury that it was obligated to determine the "sum . . . you believe will fairly and justly compensate plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence." Wal-Mart complains that the circuit court did not modify the instruction to describe the occurrence: "as a direct result of the boxes falling upon her as mentioned in the evidence, but you may not award plaintiff any sum for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of her multiple sclerosis."

The jury awarded $337,500 to Shannon. Wal-Mart contends that the circuit court erred in two ways: in admitting evidence that injuries from the Wal-Mart incident and multiple sclerosis and in not modifying MAI 31.07 to differentiate between the Wal-Mart incident and multiple sclerosis. The circuit court did not err in either way.

■ Shannon was entitled to establish that the injuries she sustained from Wal–Mart's boxes aggravated her multiple sclerosis and that her multiple sclerosis exacerbated her recovery from Wal–Mart's infliction of injury.

Missouri follows the general rule that a person injured due to negligence of another is entitled to recover all damages proximately traceable to the original negligence, including subsequent aggravation which the law regards as a natural result of the original injury, even though some intervening agency may have contributed to the result.

*Chaussard v. Kansas City Southern Railway Company*, 536 S.W.2d 822, 829 (Mo.App. 1976). *See also State ex rel. Smith v. Weinstein*, 398 S.W.2d 41, 44 (Mo.App.1965). As a force which actively operated to produce harm to Shannon after Wal–Mart's negligent act, Shannon's multiple sclerosis was an intervening cause. RESTATEMENT (SECOND) OF TORTS § 441 (1965).

Wal–Mart argues that this intervening cause superseded its negligent act and relieved it of liability for "any damages" related to Shannon's multiple sclerosis. This would be true only if the damages arising from Shannon's multiple sclerosis were not foreseeable.

■ Neither Wal-Mart nor any reasonable merchant would have necessarily contemplated Shannon's contracting a debilitating disease which would exacerbate the injuries she suffered at Wal–Mart's store and which would itself be exacerbated by those injuries. Yet, Shannon's subsequent complications with multiple sclerosis were a normal event in the sense that it was an ordinary human occurrence and was not abnormal, such as a pedestrian's slipping and falling on a safe, dry sidewalk. Shannon's difficulty with multiple sclerosis was, therefore, a forseeable event. Because the intervening cause was foreseeable, Wal-Mart was liable to the extent that it worsened Shannon's multiple sclerosis and that the multiple sclerosis aggravated Wal-Mart's injuries.

■ Foreseeability is not a matter of mathematical certainty. No event is entirely foreseeable. That Wal–Mart did not foresee the extent of Shannon's injuries or the manner in which they occurred does not render them unforeseeable. *Rogger v. Voyles*, 797 S.W.2d 844, 847 (Mo.App.1990); RESTATEMENT (SECOND) OF TORTS § 435 (1965).

■ Wal–Mart relies heavily on *Turner v. Yellow Cab Company of Springfield*, 361 S.W.2d 149 (Mo.App.1962), for support of its counterview. *Turner* is not applicable to Wal–Mart's case. It was a "two accident case:" the plaintiff had been injured by two different tortfeasors in two separate automobile accidents, and he was suing the first tortfeasor for injuries sustained in the first accident. The jury heard evidence about the second accident. Judge Stone agreed that the jury was properly instructed that it could not "consider any ... aggravation of existing injuries ... which plaintiff may have sustained as a result of [the second accident]." *Id.* at 156. Wal–Mart wrongly seizes on the phrase "aggravation of existing injuries." Judge Stone merely was saying that *Turner* was not a case in which the first tortfeasor "may be held for injuries sustained by plaintiff in the second accident on the theory that such accident occurred by reason of a weakened member or impaired physical condition resulting from the first accident." *Id.* at 155.

Shannon, on the other hand, suffered a subsequent disease which was exacerbated by the injuries inflicted by Wal–Mart. No second tortfeasor caused a second injury. Judge Stone observed:

[A]lthough not liable for loss resulting from an intervening cause or not shown to be a proximate consequence of his wrong, a tort-feasor is liable ... for ... such disability and damage subsequent to the date of the second accident as plaintiff would have sustained anyway even if the second accident had not occurred.

*Id.* The jury in Shannon's case was entitled to hear about Shannon's medical condition and prognosis resulting from her Wal–Mart injuries. The circuit court did not err.

For the same reason, the circuit court properly rejected Wal–Mart's suggested modification to MAI 31.07. The circuit court would have erred had it adopted Wal–Mart's suggested language that the jury was precluded from awarding to plaintiff "any sum for *any* damages"[1] related to Shannon's multiple sclerosis. That would have erroneously precluded awarding damages for Wal–Mart's aggravation of Shannon's multiple sclerosis and for the multiple sclerosis' aggravation of Wal–Mart's injuries. We, therefore, reject Wal–Mart's contention that the circuit court erred in not modifying MAI 31.07 in the manner it suggested.

▮ After rejecting Wal–Mart's proffered instruction, the circuit court offered Wal–Mart an opportunity to object further to MAI 31.07. It declined, saying "no objection" when the circuit court invited further objection to its using an unmodified MAI 31.07. We have already ruled that a litigant's failure to object specifically to the alleged vagueness of "occurrence" in MAI 4.01, an instruction virtually identical to MAI 31.07, preserves nothing for review. Rule 70.03; *Pace Properties, Inc. v. American Manufacturers Mutual Insurance Company*, 918 S.W.2d 883, 887 (Mo.App.1996). Wal–Mart did not sufficiently object to the instruction to preserve the issue for our review. We, therefore, reject the point.

We affirm the circuit court's judgment.

BRECKENRIDGE, P.J., and LOWENSTEIN, J., concur.